UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | * Case No. 1:18-CR-10251-ADB |
| BYRON CARDOZO, | * |
| Defendant. | * |

**MEMORANDUM AND ORDER ON
CARDOZO'S MOTION TO DISMISS INDICTMENT**

BURROUGHS, D.J.

Defendant Byron Cardozo ("Cardozo") moves to dismiss the indictment against him on the grounds that 18 U.S.C. § 2261A(2)(B) and § 875(c), as applied to him, violate the Free Speech Clause of the First Amendment. [ECF No. 48].

**I. BACKGROUND**

On August 7, 2018, a grand jury returned a two-count indictment (the "Indictment") against Cardozo charging him with cyberstalking in violation of 18 U.S.C. § 2261A(2)(B) and interstate threats in violation of 18 U.S.C. § 875(c). [ECF No. 1 ¶¶ 23–24].

Count One alleges that from in or about February 2017 to in or about August 2018, Cardozo "with intent to harass and intimidate, used an interactive computer service . . . to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Jane Doe 1 . . . in violation of 18 U.S.C. § 2261A(2)(B)." Id. ¶ 23. Count Two alleges that on or about May 21, 2018, Cardozo "knowingly and willfully transmitted in interstate . . . commerce a communication containing a threat to injure the person

of another, for the purpose of issuing the threat, knowing that it would be interpreted as a threat, and recklessly disregarding the risk that his communication would be interpreted as a threat . . . in violation of 18 U.S.C. § 875(c)." Id. ¶ 24.

Jane Doe 1 is a photographer and writer who operated her own website. Id. ¶¶ 2–5. In late 2016, Jane Doe 1 published an essay which appeared in Online Magazine A. Id. ¶ 8. In the essay, Jane Doe 1 described a one-time sexual encounter between Cardozo, then age seventeen, and herself, then age thirteen, which Jane Doe 1 found to be coercive and traumatic. Id. ¶¶ 8–10.

The Indictment alleges that for approximately eighteen months following the publication of the essay, Cardozo used various platforms including Facebook, Twitter and the "comment" sections of Online Magazine A and the website of Jane Doe 1 to engage in a cyberstalking and interstate threats campaign targeting Jane Doe 1. Id. ¶ 6. The Indictment further alleges that in April of 2017, Jane Doe 1 obtained an injunction against Cardozo forbidding him from communicating with her. Id. ¶ 7.

The Indictment contains many examples of comments which Cardozo allegedly posted to the website of Online Magazine A and the website belonging to Jane Doe 1. Id. ¶¶ 12–22. The following sample gives some sense of the basis for the criminal charges brought in this case:

- On or about March 3, 2018, Cardozo posted a comment on Online Magazine A that stated, in part: "[I] WILL HAUNT YOU FOR THE REST OF YOUR PATHETIC LIFE . . . . WE ARE WAITING." Id. ¶ 13.

- On or about April 17, 2018, Cardozo posted a comment on Online Magazine A that stated, in part: "we will show you exactly what happens when you cry wolf . . . HOW FUCKING DARE YOU YOU [sic] HAVE JUST WOKE THE DRAGON EVEN WORSE BABY GIRL AHAHAHAHA." Id. ¶ 20.

- On or about May 21, 2018, after a representative of Jane Doe 1 notified legal authorities of Cardozo's continued communications, Cardozo posted a comment on the website of Jane Doe 1 that stated, in part: "You fucking bitch keep it up and you will know what it means to be assaulted." "You are fucking done I dare you to keep pulling this shit I FUCKING DARE YOU BITCH YOU WILL KNOW FEAR TRUST ME BY THE TIME THIS SHIT IS OVER YOULL [sic] BE WISHING YOU JUST IGNORED IT." "You will fucking find out what happens when you cry wolf bitch." Id. ¶ 21.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to make a pretrial motion challenging an indictment as defective for failure to state an offense. "An indictment is legally sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Laureano-Pérez, 797 F.3d 45, 60 (1st Cir. 2015) (citations and quotation marks omitted); see also Fed. R. Crim. P. 7(c). Although an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged," and "should be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged," United States v. Berk, 652 F.3d 132, 137–38 (1st Cir. 2011) (citations and quotation marks omitted), the government "need not put forth specific evidence to survive a motion to dismiss," United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (citing United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014)). "When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" Id. (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)).

## III. DISCUSSION

Cardozo contends that, as applied to him, 18 U.S.C. § 2261A(2)(B) and § 875(c) violate the Free Speech Clause of the First Amendment, and therefore the Indictment is defective and must be dismissed.

### A. Whether the Indictment Violates the First Amendment

The First Amendment to the United States Constitution provides that, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1989). Exceptions to the First Amendment's protection of expression exist in a small number of "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." United States v. Stevens, 559 U.S. 460, 468–69 (2010) (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 571–72 (1942)). Two of these classes are relevant here –"true threats," see Virginia v. Black, 538 U.S. 343, 359 (2003), and "speech integral to criminal conduct," see United States v. Alvarez, 567 U.S. 709, 717 (2012) (citing Giboney v. Empire Storage & Ice Co., 336 U.S. 490 (1949)). The first class, true threats, "encompass[es] those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Black, 538 U.S. at 359. The second class, speech integral to criminal conduct, "is precisely what it sounds like, and it is not protected on First Amendment grounds 'merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'"

United States v. Ackell, 907 F.3d 67, 75 (1st Cir. 2018) (citing Giboney, 336 U.S. at 502), cert. denied, No. 18-7613, 2019 WL 358683 (U.S. May 13, 2019).

Cardozo contends that his course of conduct involves speech protected by the First Amendment, and, as applied to him, § 2261A(2)(B) and 18 U.S.C.§ 875(c) violate his freedom of speech. [ECF No. 49 at 1, 12]. As the basis for this contention, Cardozo first states that the purpose of his online comments was not to further criminal conduct or to express threats but rather to challenge the accuracy of the narrative publicized by Jane Doe 1 in her essay. Id. at 14. "The remedy for speech that is false is speech that is true." Id. (citing Alvarez, 567 U.S. at 727). According to Cardozo, the statute as applied to him "has the effect of taking away and chilling the free speech rights of counter speech as a remedy for inaccurate speech." Id. Second, Cardozo posits that because Jane Doe 1 is a public figure writing on matters of public concern, particularly in the context of the #MeToo movement, his comments are of public interest and are thus protected speech. See id. Third, Cardozo asserts that § 2261A(2)(B) is subject to and cannot survive strict scrutiny or even intermediate scrutiny. Id. at 17–19.

The government first responds that Cardozo's comments constitute a course of conduct well within the "true threats" and "speech integral to criminal conduct" exceptions to First Amendment protection and are therefore not protected. [ECF No. 53 at 7–11]. The government further contends that Cardozo mischaracterizes the nature of his online comments as "counter speech," and that his threats to sexually assault and injure Jane Doe 1 go far beyond "speech that is true." Id. at 10. Finally, the government denies that § 2261A(2)(B) targets protected speech but argues that even if it does incidentally reach some protected speech, the statute on its face and as applied survives intermediate scrutiny. Id. at 13.

1. Count One:  Cyberstalking

The First Circuit has rejected several First Amendment challenges to cyberstalking under § 2261A(2)(B).[1]  In United States v. Sayer, 748 F.3d 425 (1st Cir. 2014), the defendant sought to harass a former partner, Doe, by posting an online ad on Craigslist, creating fake Facebook and MySpace accounts, and posting explicit photographs of Doe on pornography websites. In these postings, he impersonated Doe and invited men to Doe's house for sexual encounters, leading a number of men to appear at Doe's door.  Id. at 428–29.  The posts and visits continued even after Doe changed her name and moved.  Id. at 429.  The defendant was convicted of cyberstalking under 18 U.S.C. § 2261A(2)(A) and identity theft under 18 U.S.C. § 1028(a)(7).  Id.  The First Circuit relied on the Supreme Court's opinion in Giboney v. Empire Storage & Ice Co., 336 U.S. 490 (1949) to reject the defendant's as-applied First Amendment challenge, holding:  "To the extent his course of conduct targeting Jane Doe involved speech at all, his speech is not protected.  Here, as in Giboney, it served only to implement [the defendant's] criminal purpose."  Sayer, 748 F.3d at 433–34.

Subsequently, the First Circuit examined what constitutes "criminal purpose" under § 2261A(2)(B).  In United States v. Ackell, 907 F.3d 67 (1st Cir. 2018), cert. denied, No. 18-7613, 2019 WL 358683 (U.S. May 13, 2019), the defendant pursued an online relationship with a high-school girl, R.R., and by mutual consent, the relationship eventually took the form of a dominant-submissive arrangement.  Over the course of their relationship, the defendant demanded that R.R. send him sexually explicit photos of herself.  Id. at 70.  When R.R. eventually expressed her desire to end the relationship, the defendant threatened to share the

---

[1] Other Circuits have similarly denied as-applied challenges to 18 U.S.C. § 2261A(2)(B).  See United States v. Osinger, 753 F.3d 939 (9th Cir. 2014); United States v. Petrovic, 701 F.3d 849 (8th Cir. 2012).

6

sexually explicit photographs he had saved of R.R. with her friends, classmates and family. Id. at 71. The defendant was convicted of cyberstalking under § 2261A(2). Id. The First Circuit held that § 2261A(2) did not reach protected speech, interpreting Sayer to indicate that:

> [W]e must read "intent to ... harass," as referring to criminal harassment which is unprotected because it constitutes true threats or speech that is integral to proscribable criminal conduct. We think that this logic would also apply to the term "intimidate" in the current version of the statute. Indeed, "interpreting the statute to avoid a serious constitutional threat," points to reading the statute as referring to "[i]ntimidation in the constitutionally proscribable sense of the word[, which] is a type of true threat."

Id. at 76 (citations omitted).

Cardozo's first argument, that his online comments were simply an expression of "counter speech," misrepresents the nature of the comments cited in the Indictment. Although Cardozo does call Jane Doe 1 a liar in multiple comments and makes other remarks challenging the veracity of her essay, the substance of the comments extends far beyond an effort to correct a false narrative. See [ECF No. 1 ¶¶ 12–22]. Notably, Cardozo alludes in detail to sexually assaulting and injuring Jane Doe 1 in the future. Id. ¶¶ 15, 21. This brings his conduct into the orbit of Sayer and Ackell. Even if Cardozo was in part motivated by a desire to correct what he perceived as a false narrative, his factual denials are so interwoven with the sexually explicit and violent imagery that they become a single course of conduct. His comments are not the "true," "rational," or "enlightened" speech that the Supreme Court described as the remedy for false speech in United States v. Alvarez, 567 U.S. 709, 727. Taking all facts alleged in the Indictment as true, Cardozo's comments do not consist of "counter speech" because they constitute a single course of conduct which served to implement his criminal purpose of harassment and intimidation.[2]

---

[2] If Cardozo wishes to argue that the facts of this case are insufficient to show that his comments were in furtherance of a criminal purpose, he may make that argument in a motion for acquittal

Cardozo's second argument, that his online comments were of public interest because they concerned a public figure, is also misplaced. In support of his assertion, Cardozo cites United States v. Cassidy, 814 F. Supp. 2d 574 (D. Md. 2011), the sole case to dismiss a cyberstalking indictment on First Amendment grounds. [ECF No. 49 at 19]. The defendant in Cassidy had joined a religious community, been cast out, and was later charged with cyberstalking the community's religious leader. Cassidy, 814 F. Supp. 2d at 576. The defendant created a number of Twitter profiles and used those profiles as well as multiple blogs to direct thousands of derogatory messages to the religious leader. Id. at 579. The district court held that the defendant's speech was protected expression, because, despite its bad taste, it challenged the target's "character and qualifications as a religious leader." Id. at 583. The court concluded that the "[i]ndictment amounts to a content-based restriction because it limits speech on the basis of whether that speech is emotionally distressing to [the religious leader]." Id. at 584.

Not only is Cassidy not controlling, but the indictment in Cassidy targeted speech that was not subject to any of the exceptions to First Amendment protection. The Cassidy court reasoned that "[t]ellingly, the Government's Indictment is not limited to categories of speech that fall outside of First Amendment protection—obscenity, fraud, defamation, true threats, incitement or speech integral to criminal conduct." Id. at 583 (footnote omitted). By contrast, the Indictment here plainly states that Cardozo engaged in a course of conduct with the "intent to harass and intimidate." [ECF No. 1 ¶ 23]. Under Ackell and Sayer, this constitutes proscribable criminal conduct outside of First Amendment protection. Ackell, 907 F.3d at 76.

---

pursuant to Federal Rule of Criminal Procedure 29. It is not, however, a matter which can be resolved in advance of trial. See Fed. R. Crim. P. 12(b)(3) (a motion to dismiss an indictment for failure to state an offense may be raised only "if . . . the motion can be determined without a trial on the merits").

8

Cardozo's third argument, that § 2261A(2) is subject to and cannot survive strict scrutiny, is equally unfounded. Firstly, the First Circuit has found that § 2261A(2) is not a content-based restriction on speech, so strict scrutiny is not warranted. Ackell, 907 F.3d at 78. ("[I]t cannot be so that § 2261A(2)(B) is an impermissible content- or viewpoint-based restriction on speech."). Secondly, as the analysis above demonstrates, Cardozo's comments constituted a course of conduct not protected by the First Amendment, so intermediate scrutiny is likewise inapplicable.

2. Count Two: True Threats

Count Two of the Indictment charges Cardozo with threatening Jane Doe 1 in violation of 18 U.S.C.§ 875(c). The charge is based on a comment that Cardozo posted to the website of Jane Doe 1 on May 21, 2018. It reads:

> "You fucking bitch keep it up and you will know what it means to be assaulted."
> "You are fucking done I dare you to keep pulling this shit I FUCKING DARE YOU BITCH YOU WILL KNOW FEAR TRUST ME BY THE TIME THIS SHIT IS OVER YOULL [sic] BE WISHING YOU JUST IGNORED IT." "You will fucking find out what happens when you cry wolf bitch."

[ECF No. 1 ¶ 21].

Cardozo urges the Court to read this comment as hyperbole, citing the Supreme Court's *per curium* opinion in Watts v. United States, 394 U.S. 705, 708 (1969):

> We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term [of threat]. For we must interpret the language Congress chose against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic and sometimes unpleasantly sharp attacks on government and public officials . . . Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.

Cardozo argues that the conditional nature of his comment is evidence that his speech was not a "true threat," and that the public nature of the disputed essay and its author render his speech a matter of public concern protected by the First Amendment. [ECF No. 49 at 22].

9

These arguments are unavailing. Whether a statement constitutes a true threat is a question generally to be decided by the trier of fact. United States v. Clemens, 738 F.3d 1, 13 (1st Cir. 2013). This principle rings especially true where a defendant alleges an alternative, non-threatening interpretation to the statement or statements that underline an indictment. See id. at 13 (holding that whether emails construed by a defendant as "generalized fantasy," "sarcastic[]," and "cartoonish and hyperbolic" amounted to threats was a question best left for the jury).

In this case, a jury may conclude that Cardozo's statements did not constitute a threat. Alternatively, a jury could conclude that calling Jane Doe 1 a "bitch," and stating that "you will know what it means to be assaulted" and "[y]ou will fucking find out what happens when you cry wolf" did constitute true threats. [ECF No. 1 ¶ 21]. For present purposes, the Indictment properly alleges the offenses charged. A jury properly instructed will ultimately determine whether the statements fall under the true-threat exception to First Amendment protection or not, but the factual dispute will not be resolved pretrial on a motion to dismiss or otherwise.

### B. Whether the Indictment was Sufficient

This motion is premised on the theory that Cardozo's "conduct, which serves as the bases of criminal allegations, constitutes free speech protected by the First Amendment." [ECF No. 49 at 23]. The Court has already concluded that Cardozo's alleged course of conduct is not protected by the First Amendment. Therefore, the indictment is sufficient, because it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Cianci, 378 F.3d 71, 81 (1st Cir. 2004) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

## IV. CONCLUSION

Accordingly, Cardozo's Motion to Dismiss the Indictment [ECF No. 48] is <u>DENIED</u>,

**SO ORDERED.**

June 24, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE