UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA  :
           :
V.           :    Case No.: 1:18-CR-10251-ADB-1
           :
BYRON CARDOZO     :

## DEFENDANT'S SENTENCING MEMORANDUM

  Defendant, Byron Cardozo, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a).  For the reasons below, Mr. Cardozo requests a sentence of time served with probation.

## I. BACKGROUND

  On August 23, 2018, Byron Cardozo was arrested at his residence in Tamarac, Florida, pursuant to a federal arrest warrant issued by the District of Massachusetts following his indictment for Cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and Interstate Threats, in violation of 18 U.S.C. § 875(c).  That same day, he initially appeared in U.S. District Court for the Southern District of Florida and was detained pending a detention hearing.  On August 27, 2018, Mr. Cardozo was ordered to be transferred to the District of Massachusetts for his detention hearing.

  On September 14, 2018, Mr. Cardozo initially appeared before this Court, which ordered that he remain detained.  He has continuously remained in custody since his arrest.  On August 20, 2019, Mr. Cardozo pleaded guilty to the charge offenses.  He is scheduled for sentencing on Wednesday, December 18, 2019.

## II. PSR

  U.S. Probation issued its final presentence report (PSR) related to Mr. Cardozo's case on

December 3, 2019.  The Defense has no objection to the final PSR.  Accordingly, Mr. Cardozo's total offense level is 19[1] and his criminal history category is VI.[2]  This results in an advisory sentencing guidelines range of 63 to 78 months.[3]

### III.    SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of 18 U.S.C. § 3553 (a).  *United States v. Booker*, 543 U.S. 220 (2005).   Sentencing should begin with a calculation of the applicable sentencing guidelines range.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)).  The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration.  *Id.*

A Court may not presume the guidelines range is reasonable, but must make an individualized assessment of each defendant based upon the facts presented in each case.  *Gall,* 128 S. Ct. at 597 (emphasis added).   After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[4] of 18 U.S.C.

---

[1] PSR, ¶.12.

[2] PSR, ¶.17.

[3] PSR, ¶.25.

[4] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:

    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)  the need for the sentence imposed:

        (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)  to afford adequate deterrence to criminal conduct;

        (C)  to protect the public from further crimes of the defendant; and

        (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)  the kinds of sentences available;

    (4)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

    (5)  any pertinent policy statement issued by the Sentencing Commission;

    (6)  the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and

    (7)  the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553 (a).

§ 3553 (a) to determine the most appropriate sentence for the instant case. *Id*. In the instant

case, Mr. Cardozo asks the Court to consider a number of important facts when evaluating his

sentencing recommendation.

### A.  The Nature and Circumstances of the Offense

On August 7, 2018, a grand jury returned a two-count Indictment charging Mr. Cardozo

with (1) Cyberstalking and (2) Interstate Threats.  As set forth in the Indictment, these charges

stem from his use of the internet to engage in a course of conduct to threaten and harass Jane

Doe 1, a professional writer and his former high school classmate.  After the Court denied his

motion to dismiss,[5] Mr. Cardozo pleaded guilty to both charges, thereby accepting responsibility

for his actions.

Mr. Cardozo's admitted misconduct consisted solely of words or statements.

Notwithstanding his choice of language, he never inflicted or attempted to inflict any physical

harm on anyone.  He asks the Court to take this into consideration when assessing the

reasonableness of both the applicable guidelines range and the government's sentencing

recommendation.

### B.  History and Characteristics of the Defendant

Mr. Cardozo was born in Plantation, Florida on May 18, 1984.[6]  He is age 35.  He is the

only child born to his parents, Oscar and Debbie Cardozo, who filed for divorce when Mr.

Cardozo was age 4.  Leading up to their separation, Mr. Cardozo witnessed incidents of domestic

---

[5] Mr. Cardozo filed a motion to dismiss on April 16, 2019.  The motion challenged the constitutionality of these charges because the allegations, as applied to him, violated the free speech clause of the First Amendment.  After considering the written submissions of counsel, the Court issued an order on June 24, 2019, denying Mr. Cardozo's motion.
[6] PSR, ¶.19.

violence between his parents.  Following altercations stemming from Oscar Cardozo's infidelity, law enforcement responded to the home on at least one occasion.

After Mr. Cardozo's parents divorced, he remained with his mother for approximately two years until she began experiencing financial hardship.   He then went to live with his father. Mr. Cardozo resided with his father and his then stepmother, Julie Cardozo, in Boca Raton for the remainder of his childhood.[7]  Despite forging a close relationship with Julie, Mr. Cardozo struggled to live up to his father's expectations, and often found himself the target of his father's abusive temper.[8]

Mr. Cardozo was a good student, who juggled karate and soccer along with academics. However, between ages 11 and 12, Mr. Cardozo was sexually abused by his friend's adult brother.[9]  These encounters involved mutually gratifying each other and watching pornography together.  As a result of the fear and deep shame he experienced, Mr. Cardozo never reported this abuse.[10]  Soon after experiencing this trauma, Mr. Cardozo's lifelong battle with mental illness and substance abuse began.[11]

By age 14, Mr. Cardozo was diagnosed with depression and borderline schizophrenia. He was later diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), polysubstance disorder, social anxiety disorder, dysthymia, and major depressive disorder.  Between ages 14 and 18, he was prescribed medications such as Zoloft, Gabapentin, and Paxil, while also attending individual counseling.  Eventually, Mr. Cardozo's use of medications, particularly anti-psychotics, became inconsistent, as they caused him to experience suicidal ideations.[12]

---

[7] Id.
[8] PSR, ¶.19-20.
[9] PSR, ¶.20 and 22.
[10] Id.
[11] PSR, ¶.21.
[12] Id.

Within a year of his sexual abuse, Mr. Cardozo first consumed alcohol at age 13.[13]  He also began smoking marijuana on a daily basis, in an effort to numb the pain of his trauma and increasing mental health issues.  At only 15, Mr. Cardozo had experimented with cocaine, crack cocaine, Xanax, Oxycontin, Dextromethorphan, and LSD.  His dependency on drugs intensified throughout high school, often serving as a form of self-medication in lieu of the pharmaceutical medications he was prescribed and sought to avoid.

At ages of 23 and 26, Mr. Cardozo attempted to commit suicide by taking a mixture of Xanax and methadone. [14]  Following each attempt, his parents had him committed under Florida's Baker Act.[15]  By 2013, Mr. Cardozo was committed for a third time after attempting suicide by hanging.[16] The following year, he began smoking and snorting heroin.  Between 1997 and 2016, Mr. Cardozo's severe substance abuse and mental illness caused him to be committed involuntarily on four (4) occasions, attempt suicide and overdose repeatedly, and cycle in and out of both detox and rehabilitation programs.[17]

The combination of mental health and substance abuse issues also led to, if not substantially contributed to, Mr. Cardozo's criminal history.  The struggles of sexual abuse-related trauma combined with the debilitating effects of mental illness and drug addiction, shaped Mr. Cardozo's adolescence and foreshadowed his adulthood.  This is evident from his long string of arrests and convictions.  He asks the Court to take this sympathetic history[18] into

---

[13] PSR, ¶.22.
[14] PSR, ¶.21.
[15] The Baker Act is a Florida law that allows people with mental illness to be held involuntarily for up to 72 hours in a mental health facility if they meet certain criteria.  This can be initiated by judges, law enforcement, or doctors/mental health professionals.
[16] PSR, ¶.22.
[17] PSR, ¶.21-23.
[18] The Defense provided Probation and the Government with medical records evidencing Mr. Cardozo's substance abuse and mental health history, which form the basis of information related thereto set forth in the PSR.

consideration when both fashioning an appropriate sentence, and prescribing terms of his anticipated period of federal supervised release.

### C. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense</u>

The Defense concedes that a jail sentence is warranted to reflect the seriousness of Mr. Cardozo's misconduct.  When deciding how long of a sentence is necessary, the Court should be reminded that Mr. Cardozo was arrested on August 23, 2018 and has remained in pretrial custody ever since.  As of the date of sentencing, he will have served 483 days in custody, or approximately 16 months.[19]  This is the equivalent of two years when factoring in good time credit afforded to inmates in Bureau of Prisons (BOP) Custody.[20]  As such, he asks the Court to consider his time served when determining an appropriate sentence.  The Defense suggests to the Court that additional time in jail is not needed to punish Mr. Cardozo for his admitted misconduct.

### D. <u>Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant.</u>

Mr. Cardozo avers that the time he has already served in pretrial custody is sufficient, but not greater than necessary to this multi-part sentencing factor.   Mr. Cardozo's respect for the law may be ascertained by his post-arrest conduct with respect to the law enforcement agencies that arrested him, and the manner in which he has conducted himself while in pretrial custody. Throughout his entire stay at the Wyatt Detention Facility, where Mr. Cardozo has been detained, he has received one (1) disciplinary infraction[21] for being in an unauthorized area.

---

[19]https://www.timeanddate.com/date/durationresult.html?m1=08&d1=23&y1=2018&m2=12&d2=18&y2=2019&ti=on
[20] Pursuant to 18 U.S.C. § 3624(b), federal inmates serving a sentence of more than one year and less than life may receive up to 54 days per year of good time credit.  This number equates to 15% off a federal sentence for good behavior.
[21] PSR, ¶.4.

Records from Wyatt indicate that he has otherwise remained respectful towards both his peers and the facility staff.[22]

Furthermore, while at the Wyatt, Mr. Cardozo has completed a number of courses.  These include Mental Health Awareness (October 20, 2019), Attitudes and Behavior Workbook (October 29, 2019), Coping Skill Strategies and Decision-Making Skills (October 16, 2019), Social Skills Workbook (September 24, 2019), and Living With Others (September 2019).   Of all the time I have been handling federal criminal cases, I have neither represented nor been made aware of any defendants completing any courses at the Wyatt.   Mr. Cardozo's voluntary efforts in this regard are remarkable and signify positive change for his future.

Lastly, Mr. Cardozo has remained substance-free while in custody.  He has also expressed his interest in the BOP's Residential Drug Abuse Program, for which he is an appropriate candidate.[23]  Collectively, this shows Mr. Cardozo has learned his lesson, conformed his conduct, and respects the law.

## IV.   RESPONSE TO GOVERNMENT'S SENTENCING MEMO

In its sentencing memorandum, regarding *Jane Doe 4*, the government asks the Court to consider irrelevant and uncharged, alleged misconduct of sexual abuse and child pornography. Mr. Cardozo has not been charged with any such crimes.  If the government has evidence of child pornography, it certainly would have indicted him with such offenses.  If there is a complaining witness alleging child molestation, this Court has no jurisdiction over such misconduct.   To date and to the Defense's knowledge, neither Florida nor any other jurisdiction has filed such charges.  Even if charges were pending, Mr. Cardozo would enjoy the presumption of innocence to any such allegations.   The evidence on his electronic devices, at this juncture,

---

[22] Id.
[23] PSR, ¶.23.

7

constitutes nothing more than perverse, fantasy talk.   For these reasons, the Defense asks the Court to disregard the government's arguments regarding *Jane Doe 4*, and to sentence Mr. Cardozo to those offenses for which he stands convicted.

## V.   ATTACHMENTS

A.  Certificates of Achievement & Awards; and

B.  Statements of Support

## VI.   CONCLUSION

Based upon the foregoing, Mr. Cardozo respectfully asks the Court to impose a sentence of time served followed by a period of supervised release, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted this 11th day of December 2019.

> Respectfully submitted
> Defendant,
> Byron Cardozo,
> By his Counsel
>
>
> /s/ John L. Calcagni III, Esq.
> John L. Calcagni III (BBO# 657433)
> Law Office of John L. Calcagni III, Inc.
> One Custom House Street, Suite 300
> Providence, RI 02903
> Phone: (401) 351.5100
> Fax: (401) 351.5101
> Email:  jc@calcagnilaw.com

**<u>CERTIFICATION</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on December 11, 2019.

/s/ John L. Calcagni III, Esq.

John L. Calcagni III (BBO# 657433)
Law Office of John L. Calcagni III, Inc.
One Custom House Street, Suite 300
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email:  jc@calcagnilaw.com
